Judge Undekivood,
delivered the opinion of the court.
Sheridan made his promissory note payable to Berthoud, wh.o assigned it to Wood, who assigned it to R. and II. II. Steele. They instituted suit and prosecuted Sheridan to insolvency, it is admitted for the purpose of presenting the point fairly, on which this decision turns, that proper diligence by suit was used. Wood instituted his action of assumpsit against Berthoud, setting out the foregoing facts in his declaration. In addition thereto, he averred that he had paid the Steeles the amount of the note and the costs of the suit against Sheridan, when his insolvency was ascertained. Whereupon, he predicates the liability of Berthoud as assignor to restore the consi deration of the assignment, &c. There is no proof supporting the averment, that Wood had paid the Steeles, and in the absence of such proof the question is presented; is Wood entitled to recourse on Berthoud? The circuit court upon a demurrer to the evidence, gave judgment in favor of Berthoud and Wood prosecutes a writ of error.
We have not been able to find among the numerous cases in our books of reports- settling the liability of *304 assignors to assignees, a single adjudication where the point now involved has been noticed, much less settled. We are left, therefore, to dispose of it upon the principles of analogy and reason. We admit, that the fact of payment by Wood to the Steeles appearing, so that Wood had thereby become entiiled to- control the judgment against Sheridan, in addition to the other facts exhibited by the record, (waiving the question of diligence) would have placed Wood’s right to recourse against Berthoud, upon the assignment beyond a doubt. But as that fact does not appear, we are of opinion (the chief justice dissenting) that-the evidence did not sustain the declaration by making out the cause of action, and that the circuit court therefore, properly rendered judgment in favor of defendant.
■inie.tmediaie assignee cannot recover of his assignor, without showing “that he is entitled, to the judgment against 'obligor.”
Principle upon which liability of an assignor rests, is a 'failure of •consideration
Return of nul-la bona s conclusive evidence of obli-lor’s insolvency.
The principle upon which the liability of the assignor rests, is a failure of consideration. The adjudged cases show the nature and extent of the failure of consideration which will entitle the assignee to recourse, hut from the cases which settle the grounds of the assignors liability, and regulate the character of the evidence which the assignee is required to produce, it is perfectly clear to our minds, that his right to recover is not predicated •on a supposition that there has been sueh an entire failure of consideration, as that the judgment is not only then, but will always continue valueless.
Thus, where due diligence has been used and a return of nulla Iona is made by the sheriff, the assignee has his recourse; but although the return is made conclusive evidence of the obligors insolvency at the time, it does not thence follow, that he will always remain insolvent. Although, the return may be, and is evidence, that the judgment against the obligor is of no present value, it does not thence result that it will remain worthless through all future time. On the contrary, we know that an individual, may he insolvent and thereafter, become wealthy, and that there may be some value attached to the obligations of men binding them to pay money or property, at the time they are insolvent. We do not often witness obligees cancelling obligations and notes on their insolvent debtors. They are preserved as things of contingent value.
Assignee, after prose-to insolvency* may take his recourse on mey looito the ability of obligor,
As long as ás-nonfract^of11 assignment by holding to hi* gf^he cannot claim of his assignor the m3nt.
Assignor raJ^nee the° consideration of tbeassign-an right to the judgment against °bli-gorsandwin be protected by common law courts.
*305 When a note or obligation assignable by law, is transferred to an assignee he is invested with a legal right to the obligation. The consequence of this right is, that he may proceed immediately after the note or Obligation is due, to use legal means for the collection of the debt. If he fails having used due diligence, then he may resort to his assignor or if he prefers it, he may rest upon his right to collect the amount of the judgment at a future time from the obligor. If he prefers to take this latter course, he has an unquestionable right to do so, and if he does, his conduct demonstrates that he does not recognize any failure of consideration on account of the insolvency of the obligor. On the contrary, by his refusal to take recourse on the assignor upon the assignment, and by looking to the future ability of the obligor to make payment, the assignee incontes-tibly manifests the continued existence of a valid consideration for the assignment, and in support, his right to hold On to his judgment.
The assignee, unless he is influenced by impure motives, cannot insist upon his right to affirm the contract of assignment by holding to the judgment and at the same time disaffirm it, by claiming from the assignor the consideration paid; nor is there any principle of law which can tolerate the assignee in affirming the contract for one purpose, and disaffirming it for another. It therefore, seems to us, that both morality and law leads to the conclusion irresistahly, that as long as the assignee affirms the contract by holding to his judgment, he cannot claim the consideration for the assignment. What then should Wood have shown in this case as essential and indispensable to his recovery from Berthoud 1 We answer, that the Steeles had elected to disaffirm the contract by which they had bees vested with the legal title to the note on Sheridan...
That would have been apparent, by proving that the Steeles had recéived payment of the consideration for the assignment to them, as the reception of the money would have amounted to a disaffirmance of the contract by them, and would have placed Wood in a sitúation to disaffirm the contract resulting from the assignment made by Berthoud to him. Thus, Berthoud might be equitably vested with a right to the money which, at a future day, may possibly be collected on *306 the -judgment in the name of the Steeles, against Sheridan, and this right would, we think, be protected by the common law court, securing to Berthoud the privilege of controling and managing the judgment against Sheridan in the names of the Steeles for his benefit, upon its appearing that the contracts implied by law from the several assignments had been disaffirmed and settled. But suppose the Steeles will not consent to part with their judgment against Sheridan, and make no complaint of his insolvency, proposing to risk the ultimate collection of the whole judgment, rather than accept from Wood the consideration paid him for the assignment; what right, legal or equitable, has Wood in this state of the case, to recourse upon Berthoud? None whatever. If he asserts a-right, founded on Sheridan’s insolvency, and urges that the consideration, has thereby failed, it may be replied that the Steeles have refused to rely on such a failure of consideration and prefer to hold their judgment. This presents the question, whether Wood can complain of a failure of consideration when his assignees do not and will not? We think it very clear that he cannot complain. He has parted with all title and interest in the note. The law imposed a contingent liability upon him to his assignees, but that contingency can never injure him, because his liability on account of it, has been virtually released by the refusal of .the Steeles to yield their judgment.
When holder, or no techas* prosecuted obligor to in-theV rfuT’o'f13 assignor, in-Btantly to pay ment ^ signee, of the consideration of the assign-meni.
■ If the Steeles preferring to retain their judgment on Sheridan, had executed a written release to Wood could he, notwithstanding such release, have maintained his action against Berthoud? We think not; ^or h' he could, then there exists one case, where a man without the shadow of an interest and without the possibility of sustaining loss, may be permitted to recover from another and thus enrich himself at another’s expense. The determination of the Steeles to abide by their judgment is equivalent to a written release, There is a plain common sense course to take in cases 0f an{j whicbi we think will prevent all difficulty and confusion. When the last assignee diligently prosecutes' the obligor to insolvency, then the contingency on which his immediate assignor may be charged has happened, and it is therefore, the duty of the assignor without waiting until he is requested, to pay or *307 tender payment to the assignee. If a man bind himself to make a conveyance upon the payment of the notes for the purchase money and he assigns the notes he is bound to take notice when they are paid and to convey accordingly, as this court has decided. likewise, the assignor who is bound to refund the consideration by implication of law, upon a contingency, shouldbe required to notice the happening of the contingency. Especially as the means of ascertaining the fact are so completely within his power from the nature of the contingency and the circumstances which must attend it. Now, when the assignor’s liability attaches, let him pay or tender payment to his assignee, if it be accepted then the contract is disaffirmed; if it be rejected, then it is affirmed. The assignee thereby makes his election to abide by his judgment, he looks to the future ability of the obligor and if afterwards he should attempt by recourse on the assignor to collect the money he has rejected, it will be a good defence to say to him “you have trifled with the contract, you have injured me by refusing to accept payment when it was offered and thereby deprived me of recourse upon my immediate assignor, who has removed or become insolvent since your refusal to accept payment, and therefore, in the equitable action of assumpsit you can recover nothing of me. Yours has been the fault and I will not pay.
Assignor of Ivhen obligor has been proa-?outed to 1"solvenc3r-accept the consideration money, the assignment ia dis-ajfirmed; otherwise, if refuse\ eultmg\o ^ abide by his judgment, ha‘ against1* ^ assiguor.
After assignment, and be-obligor moves out of the ha^hlf re-***8 course, with-owi first prose-to Vnsolvenc°r
To illustrate the foregoing views by putting a case. Suppose, after the assignment of a note and before it becomes due, the obligor removes from the state with all his property and settles in an adjoining state, where his residence is well known, both to assignor' and as. signee and where his means are ample to pay the debt#
In such" a case the law, as recognized by two judges in Clay vs. Johnson, &c., VI Mon. 644, although they differed on another point, would permit the assignee to .take his recourse against the assignor, without first prosecuting the obligor to insolvency in the state to which he may have removed. Although it might be very certain that the debt could be collected by pursuing the obligor, yet the law will not impose that trouble on the assignee and compel him to go out of the state in such a case in pursuit of his debt. Now, suppose there are several assignors and assignees upon the same note, the obligor having thus removed, and the last assignee and *308 holder, although permittedjNdo so by law, will not consent to take.his recourse against his assignor; but prefers following the obligor to the state where he resides, because the amount of the debt is greatly more than the consideration paid by him for the assignment, will the fact of the obligors removal after assignment and before the note became due, authorize all intermediate assignees to go to law claiming the amount of the consideration paid on their several assignments, when the last assignee and legal title holder of the note perfectly contented with his contract will not look to his assignor and intends to make the money out of the obligor? In this pase there is suplí a failure of consideration as will give the recourse against the assignor, provided the holder pf the note chooses to take it, but if he will not disaffirm the contract, we cannot perceive the principle upon which intermediate assignors and assignees can be involved in numerous law suits.^..By parting with all their title in the note, they have nothing to do with it or any incidental liability which might result, if the Iasi assignee had not determined to rest upon his judgment in the one case or to pursue the obligor in the other. The basis upon which the right of an intermediate as-signee to sue his assignor, rests, if an action can be supported at all, when the last assignee abandons his recourse upon the assignment, is this, that thp right vests and becomes absolute as soon as the obligor’s insolvency is ascertained by suit and that no circumstance pan prevent it. Now, we deny that there is any such vestiture of right in an intermediate assignee when the last assigee determines to abandon his recourse upon the assignment and look to the obligor. When that is done by the last assignee there is ample consideration still remaining in the prospect of future payment to support all the assignments, and no one can or ought to be permitted to disaffirm, or to break any link in the chain which constitutes the last assignee’s title to the note or obligation. The law extends to the holder and last assigee an option either to take his recourse upon the assignment or to abandon that and look to the obli- ' gor. He cannot have both, and if he chooses the last, he must let his assignor rest. If he takes the first, he surrenders all claim upon the obligor to collect the*, debt from him and gives his assignee just as much righto collect from the obligor the judgment if there be *309 one as a man would have to collect a note purchased by him and taken without assignment. Hence no intermediate assignee should be permitted to coerce the consideration from his assignor until he is prepared to re-invest his assignor with all the right he originally possessed, that is the right to collect from the obligor. Let it be recollected that the action of assumpsit was first tolerated to recover the consideration paid upon the assignment of notes in consequence of the apparent equity of coercing its return, when the debt could not be collected and not upon the strict principles of the common law, see Robinson’s adm’x. vs. White, IV Litt. 237. Shall it then be said that any such assumpsit can be implied where the person claiming its benefit fails to do justice by restoring as far as he can do it, the right to collect from the original obligor. Certainly it cannot be contended for upon principles of morality or equity, upon which the whole doctrine was based in its .origin.
Let us see the consequences likely to result from a different view of the subject. Suppose the Steeles hereafter collect the debt from Sheridan (and they certainly have a right lo do so, never having surrendered it) and in the mean time Wood has collected from Ber-thoud the amount páid him for the assignment to Wood. What is Berthoud to do? Must he then sue Wood to recover back the amount which Wood collects if he is permitted to succeed in this action? If he takes that course, will not the judgment here, under which Wood recovers, bar his right? Most certainly it will. He has then lost his note on Sheridan for $1850, which has been collected by the Steeles and has returned tci Wood with costs, the consideration received from him. How shall this glaring iniquity be prevented? We may be told, let Berthoud injoin the judgment after it is rendered. But what ground of equity can he have against its payment? None, whatever, unless it be that if he pays Wood, the Steeles may collect the debt from Sheridan and he may thereby loose all. If the chancellor grants the injunction, what decree can he make? ■ Will he perpetuate the injunction, upon ascertaing that the Steeles had determined to hold their judgment on Sheridan, and abandon their recourse against Wood? If so, it would have saved a great deal of trouble and *310 expense, if Wood had béen required to make his success at law depend upon showing that the Steeles had elected to look to him upon the assignment and that he had thereupon paid them.
Intermediate assignee must, before he can recover from his assignor, show, that subsequent assignees have been paid, or that he is entitled to transfer the note or judgment to the assignor from whom he seeks to recover.
We see no other ground upon winch the injunction could be possibly perpetuated, unless the payment of the money by Sheridan could be shown. The only good then, that a chancery suit can do, is to ascertain a fact after an expensive litigation upon which to perpetuate an injunction, and which we propose shall- be ascertained before the judgment is obtained, and if its existence shall be found, then to prevent the judgment entirely. But is it not singular, that the action of as-sumpsit, growing out of equitable considerations connected with assignments should require a, suit in chancery, before the defendant can exhibit a complete de-fence! We cannot sanction such a doctrine, when we perceive no necessity for it. Suppose, m the case already put, that the obligor after the assignment and before the note becomes due, should remove to another state and the last assignee should follow the obligor and bring suit on the note where he resides, preferring that to his recourse, can an intermediate assignee, whilst the suit against the obligor is pending in another state, institute suit against his assignor, and recover the money even before suit against the obligor is ended ? Or shall the intermediate assignee be permitted to get his judgment in such a case and drive his assignor info chancery ? Justice requires a negative answer.
We are, therefore, of opinion that an intermediate assignee must, before he can recover from his assignor, show, that the subsequent assignees have been paid or have placed it in the power of such intermediate as-signee, to give the controul of the note or the judgment to the assignor, from whom the recovery is sought. If the note or obligation assigned, has not been merged in a judgment, it must be returned with a re-assignment or cancelment of the assignment, subsequent to that on which recourse is sought. If, however, it be merged in the judgment, then a settlement by all the subsequent assignees must be'shown, and that will be sufficient to establish the right of the assignor proceeded against, upon making payment to his assignee, to control the judgment, although in another’s name. It follows from *311 the foregoing principles, that as Wood failed to show that he had in any manner settled with the Steeles, that the court decided correctly upon the demurrer to the evidence.
Dcnnv and Breclcenridgc, for plaintiff; Crittenden, and Nicholas, for defendant.
Wherefore, the judgment is affirmed with costs.